UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JEFFREY SCOTT HERNDON,          )
                                )
          Petitioner,           ) Case No. 3:08-1102
     v.                         ) (Crim. Case No. 3:04-00199)
                                ) Judge Echols
UNITED STATES OF AMERICA,       )
                                )
          Respondent.           )

## MEMORANDUM

Pending before the Court is Petitioner Jeffrey Scott Herndon's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (Docket Entry No. 1). In support of the Motion, Petitioner has filed a 124-page Memorandum. The Government has filed a response in opposition to the Motion (Docket Entry No. 22), and Petitioner has filed a 25-page reply (Docket Entry No. 27).

## I.  Factual Background

On November 17, 2004, a federal grand jury returned a two-count indictment relating to Petitioner's possession of child pornography. Specifically, Count One alleged that from on or about November 21, 2000 through on or about February 4, 2003, Petitioner knowingly received and attempted to receive child pornography which had traveled in interstate and foreign commerce. Count Two alleged that on or about February 3, 2003, Petitioner possessed a computer and external hard drives that contained images of child pornography which had traveled in interstate and foreign commerce. The facts

1

underlying the basis for the Indictment are thoroughly set forth in this Court's ruling which denied the majority of Petitioner's Motion to Suppress, Case No. 3:04-00199, Docket Entry No. 32 at 1-11, and in the Sixth Circuit's affirmance of that ruling, United States v. Herndon, 501 F.3d 683, 685-87 (6th Cir. 2007). For purposes of the present Motion, the facts are as follow.

On November 1, 2001, Petitioner pled guilty in the Criminal Court of Davidson County, Tennessee to several counts of sexual exploitation of a minor. (Govt. Ex. 2). After serving nine months imprisonment, Petitioner was placed on probation and subject to certain terms and conditions, including "Sex Offender Directives" ("Directives") by the Tennessee Board of Probation and Parole, through which Petitioner agreed not to "purchase or possess any pornographic or sexually explicit materials," including child pornography. Further, Petitioner was not to have Internet access on his computer without the prior approval of his Probation Officer. Petitioner did not have permission to access the Internet and he consented to have his computer checked at any time to insure compliance with the no-Internet provision. While Petitioner had the right to challenge the Directives by petitioning the state court, he did not do so.

As a part of his probation, Petitioner attended counseling for sex offenders conducted by John Brogden ("Brogden"). Petitioner was discharged from the program in late January 2003 because of his

2

extreme views about the legitimacy of child pornography for personal use and his drafting of a "letter of apology" (required by the program) and subsequent follow-up letter in which he basically blamed his victim for his legal difficulties.

At around the time Petitioner was discharged from the program, he was assigned a new Probation Officer named George Harrien ("Harrien"). Petitioner met with Harrien on February 4, 2003 during which time Harrien expressed concerns about Petitioner's inability or unwillingness to find and keep a job, and Petitioner responded that he had looked for jobs, including searching the Internet. Harrien subsequently told his supervisor about the Internet revelation and also spoke with Broddgen about Petitioner's participation in the program, including the so-called apology letter and its follow-up. Harrien also went to the local courthouse to review Petitioner's file. Harrien then received permission from his supervisor to inspect Petitioner's computer.

On February 4, 2003, Harrien and another Probation Officer, Calvin Burden ("Burden") went to Petitioner's residence and, upon being let inside, Harrien told Petitioner that they were there to check his computer. The officers found a MacIntosh laptop which was up and running, as well as external drives. By using pre-search software, Harrien determined that one or more of the external drives contained images of child pornography and the laptop computer contained pornography, although not necessarily

3

child pornography.  Upon discovery of the pornography, Harrien called an Assistant District Attorney who sent police officers to the scene.  Petitioner was arrested, and the laptop and several external hard drives were seized.

After initially being charged with state crimes, Petitioner was indicted on the federal charges previously mentioned.  While being processed on those charges, documents were found in a bag which contained Petitioner's personal effects.

Petitioner moved to suppress the items found on the computer and external drives, as well as the documents discovered in the bag he was carrying while being transferred to federal custody.  The motion was granted solely with respect to written materials found on Petitioner's computer, but denied in all other respects.  Petitioner then filed a "Post-Hearing Brief Regarding Supplemental Issues" in which he claimed that in the Directives he consented only to a search of his computer by his probation officer, not the police.  The Court entered an order rejecting that argument because the police seized the computer and its related peripherals under the plain view exception to the Fourth Amendment's warrant requirement.

After Petitioner's Motion to Suppress was denied, Petitioner entered a written plea agreement with the Government and agreed to plead guilty to the charge contained in Count One of the Indictment.  After an extended plea colloquy during which

4

Petitioner acknowledged that counsel had done everything asked of him, that he was satisfied with counsel's performance and that he was knowingly, willingly and voluntarily pleading guilty because he was in fact guilty of the charge, the Court accepted the plea agreement. Petitioner was sentenced to a term of 72 months imprisonment and, as already indicated, his conviction was affirmed on appeal.

## II.  <u>STANDARD OF REVIEW</u>

To prevail on a § 2255 motion, the Petitioner must establish either an error of constitutional magnitude that had a substantial and injurious effect or influence on his criminal proceeding, <u>see</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637-38 (1993), or the record must reflect a fundamental defect in the proceedings that inherently resulted in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. <u>Reed v. Farley</u>, 512 U.S. 339, 348 (1994); <u>United States v. Todaro</u>, 982 F.2d 1025, 1028 (6th Cir. 1993). Claims of error must be raised in the trial court and on direct appeal or such claims are procedurally defaulted. See <u>Phillip v. United States</u>, 229 F.3d 550, 552 (6th Cir. 2000).

To excuse a procedural default, the Petitioner must show cause for failing to raise the claim prior to the filing of his § 2255 Motion and actual prejudice resulting from the error of which he complains, or he must show his actual innocence of the crime.

5

See id.; Peveler v. United States, 269 F.3d 693, 697 (6th Cir. 2001). Absent such a showing, a procedurally defaulted claim cannot give rise to relief under § 2255. Peveler, 269 F.3d at 698.

Under Rule 8 of the Rules Governing Section 2255 Proceedings, the Court "must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Petitioner is not entitled to an evidentiary hearing if the § 2255 motion and the record of the case conclusively show that he is not entitled to relief. See Green v. United States, 65 F.3d 546, 548 (6th Cir. 1995). Finally, when the trial judge also hears the collateral proceedings, the judge may rely on his recollections of the prior proceedings in ruling on the collateral attack. Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

### III. LEGAL ANALYSIS

In his Motion, Petitioner raises three claims. First, he argues the statute which criminalizes the possession of child pornography violates the free speech clause of the First Amendment. Second, he claims the Assistant United States Attorney ("AUSA") who prosecuted this case engaged in prosecutorial misconduct by presenting perjured testimony at the suppression hearing. Finally, he claims defense counsel was ineffective, both before this Court and on appeal.

6

**A. First Amendment Claim**

Petitioner first claims, and spends more than 44 pages of his Memorandum arguing, that 18 U.S.C. § 2252 is a violation of the First Amendment, at least insofar as it prohibits the possession and viewing of child pornography in one's own home. After delving into the structure of the Constitution, the importance of the First Amendment, and the primacy of one's home, Petitioner argues that Congress acted unlawfully in enacting 18 U.S.C. § 2252 because the harm caused from privately viewing child pornography has not been well-documented and private use of child pornography has societal and personal benefits. The Court will spare the reader the lurid details.

The First Amendment protects non-obscene adult pornography: it does not protect sexually explicit materials involving children. New York v. Ferber, 458 U.S. 747, 764 (1982). Therefore, "the government may criminalize the possession of child pornography, even though it may not criminalize the mere possession of obscene material involving adults," United States v. Williams, 128 S.Ct. 1830, 1836 (2008), and Section 2252 does not violate an individual's right to free speech under the First Amendment. United States v. Halter, 259 Fed. Appx. 738, 739-40 (6th Cir. 2008). Petitioner is entitled to no relief on this claim.

**B. Prosecutorial Misconduct Claim**

Petitioner claims that the AUSA who presented the Government's

case at the suppression hearing engaged in prosecutorial misconduct by presenting perjured testimony. Specifically, Petitioner alleges that the prosecutor, through Harrien, presented perjured testimony in the following respects: (1) Harrien's testimony that Petitioner "was obtaining pictures and downloading them onto the Internet"; (2) Harrien's testimony that he asked Petitioner, "may I check your computer?"; (3) Harrien's testimony that a memo from the Director of the Board of Probation and Parole applied to "[a]ll probationers"; (4) Harrien's testimony about Petitioner's access to the Internet; (5) Harrien's testimony that his supervisor consulted with both the district director and the state Executive Director of the Board of Probation and Parole; (6) Harrien's testimony that he regularly communicated with sex offender treatment providers; and (7) Harrien's testimony that he heard Petitioner's laptop and/or external drive humming.

The Sixth Circuit has set forth the standard to be utilized in analyzing claims of prosecutorial misconduct in the alleged use of perjurious testimony as follows:

> "The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. In order to establish prosecutorial misconduct or denial of due process, the defendant must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. The burden is on the defendant to show that the testimony was actually perjured, and mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony."

8

<u>Coe v. Bell</u>, 161 F.3d 320, 343 (6th Cir. 1998)(quoting, <u>United</u>
<u>States v. Lockmondy</u>, 890 F.2d 817, 822 (6th Cir. 1989)).

Allegations that a prosecutor knowingly allowed perjury must
be based upon more than speculation or conjecture – they must be
supported by the record. <u>Starr v. Mitchell</u>, 2000 WL 1529807 at *5
(6th Cir. 2000); <u>see</u> <u>also</u>, <u>United States v. Fabuluje</u>, 2000 WL 17839
at *1 (5th Cir. 2000). With regard to the "actually false" prong,
mere inconsistencies in testimony are not enough – the statement
must be "indisputably false." <u>Rosencrantz v. Laffler</u>, 2009 WL
1586738 at *7 (6th Cir. 2009). As for the material prong, the issue
is the alleged "'misconduct's effect on the trial, not the
blameworthiness of the prosecutor[.]'" <u>Id</u>. at *11 (quoting, <u>Smith</u>
<u>v. Phillips</u>, 455 U.S. 209, 219 n. 10 (1982)). Finally, to establish
the prejudice prong, Petitioner must show that the misconduct had
a substantial effect on the outcome of the proceedings. <u>Bates v.</u>
<u>Bell</u>, 402 F.3d 635, 641 (6th Cir. 2005).

In this case, with respect to each of the allegedly false
statements made by Harrien, Petitioner has failed to establish any
of the three elements required to prove prosecutorial misconduct.

**1. Testimony About Petitioner Distributing Child Pornography**

In discussing his trip to the local courthouse to review
Petitioner's file, Harrien testified as follows:

> I then left and went to the courthouse and obtained court
> records as to Mr. Herndon's original offense.  And in
> those, I found that his original offense also involved

9

Computer usage. He was obtaining pictures and downloading them onto the internet.

(Suppression Hearing Transcript "Hrg. Tr." at 48). Petitioner claims Harrien's statement that "He [Petitioner] was obtaining pictures and downloading them onto the internet" is indisputably false because Petitioner was never charged with distributing child pornography. However, leaving aside that Harrien may have simply misspoke, merely because Petitioner was never charged with distribution does not mean that he had not done so, and certainly does not show that the prosecutor knew the statement was false, if, in fact, it was. Regardless, Petitioner was not prejudiced because the Court did not rely on the statement in making its rulings on the Motion to Suppress. Quite the contrary, the Court stated Petitioner had pled guilty in state court "to several counts of sexual exploitation of a minor." (Case No. 3:04-0019 9, Docket Entry No. 32 at 2).

## 2. Testimony About Request to Check Petitioner's Computer

Petitioner next claims Harrien testified falsely when he said that he asked Petitioner, "May I check your computer?" (Supp. Hrg. at 82). Petitioner claims the falsity of the statement is evidenced by Harrien's later testimony in which he stated that his notes from the day of the search indicated that after Petitioner opened his door, Petitioner "was instructed to avail his computer for a check by the officers." (Id. at 82). The two statements are not necessarily inconsistent because Harrien could both have asked to

10

search the computer and then instructed Petitioner to make his computer available for the search. Moreover, there is no showing that the prosecutor, who was not present at the time of the search, had any knowledge of what actually occurred at the scene of the search. In any event, Petitioner cannot show prejudice because the Court found that when Harrien went to Petitioner's residence "he told Defendant the Officers were there to check his computer." (Case No. 4:03-00199, Docket Entry No. 32 at 7). Consent was unnecessary because of Harrien's reasonable suspicion and the terms of Petitioner's probation, <u>United States v. Knights</u>, 534 U.S. 112, 122 (2001), and Harrien made clear at the suppression hearing that he did not believe Petitioner, as a probationer, needed to consent to a search of his computer.

### 3. Testimony About the Director's Memo

Petitioner also claims Harrien testified falsely about a Memo from the Board of Probation and Parole regarding searches of an offender's person, home and/or vehicle. Petitioner claims Harrien either lied when he said that it applied to all probationers or when he said that it applied to "drug offenders." Those statements are not necessarily inconsistent because "all offenders" would include "drug offenders" and, besides, Harrien's statement about "drug offenders" related to his belief that the Memo was first implemented for use with drug offenders.

11

Petitioner also claims Harrien lied when he testified that he was unaware of the Memo when he conducted the search on February 4, 2003, and/or that he did not believe it applied to searches of computers. Petitioner posits Harrien could not have any view of whether the Memo applied to the searches of computers if he did not know of the Memo's existence. This argument misconstrues Harrien's testimony. Harrien unequivocally made clear that he did not know of the existence of the Memo when he conducted the search, but that he later became aware of it. He also testified that after he became aware of the Memo he did not believe it applied to the searches of computers.

Regardless, Petitioner has not shown how the AUSA could possibly have known whether Harrien knew of the existence of the Memo before the search in question or whether Harrien believed that it did or did not apply to the search of computers. Further, the existence of the Memo played no part it this Court's ruling because, again, the Supreme Court made clear in <u>Knights</u>, *as well as* in <u>Griffin v. Washington</u>, 482 U.S. 868 (1987) that a probationer's residence can be searched without a warrant if law enforcement officials have reasonable cause to believe that a violation of a probation condition has taken place. Harrien had more than ample reasonable cause in this case.

**4. Testimony About Access to the Internet**

Petitioner next claims Harrien testified falsely about

12

Petitioner's access to the Internet. The basis for this allegation is not clear, although Petitioner appears to be asserting Harrien was somehow vague in his assertions about whether Petitioner admitted that he possessed a computer with access to the Internet. The Court has reviewed the suppression hearing transcript and finds no ambiguities, nor any basis for concluding that the AUSA would have known what Petitioner did or did not say when questioned by Harrien about his lack of employment.

Harrien testified that Petitioner stated he had looked for jobs on the Internet, not that Petitioner admitted he had access to the Internet via his own computer, and this is precisely what the Court found. Whether Petitioner possessed a computer with Internet access, or whether he accessed the Internet elsewhere, was irrelevant under the terms of his probation. He was banned from using the Internet. The mere fact that Petitioner accessed the Internet was cause for concern and that concern was amplified by other things Harrien had learned about Petitioner.

**5. Testimony About Approval By Directors**

Petitioner next claims Harrien lied when he said that his supervisor spoke with the District Director and the Executive Director. In support of this assertion Petitioner states, "I find it hard to believe that both the District and Executive Directors would not only have the time to give such permission in anywhere close to a timely manner but would even care one iota whether

13

someone 4 levels removed from themselves does a computer check or not." (Docket Entry No. 2 at 47).

This is rank speculation on Petitioner's part and not evidence of perjury. Petitioner's belief also does not show knowledge of the alleged falsity of the statement by the AUSA.

Regardless, while the Court mentioned in a footnote that Harrien "underst[ood] that the request to check the computer had been run up the chain-of-command" (Case No. 3:04-00199, Docket Entry No. 31 at 6, n.8), Harrien's understanding was not relevant to the Court's conclusion. The question at the suppression hearing was whether the search was legal under the Constitution and the Court knows of no reason why approval of higher-ups was necessary for the search to pass Constitutional muster.

### 6. Testimony About Contact With Treatment Providers

Petitioner argues Harrien lied when he said he had "been in almost daily communication with Brogden" because if Harrien had such daily communication, he would have known long before February 4, 2003 that Petitioner had been discharged from the treatment program on January 28, 2003. Leaving aside that the time frame presented by Petitioner is at most five business days, Petitioner's characterization of Harrien's testimony is simply wrong. When asked, "Do you regularly communicate with sex offender treatment providers of your probationers?", Harrien replied, "Absolutely. Almost on a daily basis." (Hrg. Tr. at 62). This exchange suggests

14

that Harrien claimed to have almost daily contact with provider<u>s</u>, plural, and not daily contact with Brogden. Since Petitioner has not shown that Harrien's testimony about speaking with treatment providers was false, the AUSA could not have knowingly presented perjured testimony which, in any event, was not even relevant to the issue before the Court.

**7. Testimony About Discovery of External Drive**

Finally, Petitioner argues the prosecutor knowingly presented perjured testimony when Harrien testified that he heard the computer and/or an external drive humming while he was in Petitioner's bedroom. Petitioner claims this is false because he was "obsessive about turning off his computer when not using it," and that even if he did not shut his computer down on this one occasion, "anyone who is the least bit familiar with computers and peripheral equipment knows that the drive motors wind down within several minutes of use to save ware [sic] and rear [sic] on motors and other moving parts." (Docket Entry No. 2 at 60-61). Petitioner asserts Harrien lied about the humming, presumably to support the conclusion that the computer and/or hard drive was in plain view.

Merely because Petitioner claims (and testified at the suppression hearing) that the computer was not running does not make it a fact. Nor does Petitioner's supposition about the common knowledge of computer users establish a fact. Further, the issue

15

of whether the computer or its external drive was humming or not is irrelevant because the testimony was that Harrien saw the laptop on Petitioner's bed and the other probation officer on the scene (Burden) saw an external hard drive protruding from the sheets near the foot of the bed.  It was only after the other probation officer found the external drive that Harrien heard humming. Further, and as already indicated, the AUSA was not on the scene and she would not know what Harrien did or did not hear.

## C.  <u>Ineffective Assistance of Counsel Claim</u>

Petitioner claims his counsel was ineffective, both before this Court and on appeal.  To establish ineffective assistance of counsel, Petitioner must show that his trial or appellate counsel's performance was deficient and that the deficiency prejudiced him. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>Evitts v. Lucey</u>, 469 U.S. 387, 396 (1985).  Petitioner must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that the lawyer's errors prejudiced the outcome of the proceedings against him.  <u>Strickland</u>, 466 U.S. at 687; <u>Arredondo v. United States</u>, 178 F.3d 778, 782 (6th Cir. 1999).  A reasonable probability is one sufficient to undermine confidence in the outcome; it is a less demanding standard than "more likely than not."  <u>Id.</u>  A court need not address both parts of the <u>Strickland</u>

16

test if the petitioner makes an insufficient showing on one. <u>Strickland</u>, 466 U.S. at 697.

<u>Strickland</u> requires a showing of both deficient performance and prejudice from the petitioner. <u>Miller v. Straub</u>, 299 F.3d 570, 578 (6th Cir. 2002). In the context of a guilty plea, this means that a Petitioner must show "prejudice by demonstrating 'a reasonable probability that, but for counsel's errors, [the Petitioner] would not have pleaded guilty and would have insisted on going to trial." <u>Id</u>. (quoting, <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985)). Petitioner has made no such showing in this case.

During the suppression hearing, Petitioner testified that his understanding of the law was that in order for consent to be valid, it must be specific, unequivocal and uncontaminated by duress and coercion. Petitioner claims that in light of this testimony, "any lawyer worth a tenth of their [sic] paycheck in the 6th Circuit, would recognize" this testimony "as an attempt to quote <u>United States v. McCaleb</u>, 552 F.2d 717, 721 (6th Cir. 1977)" which sets forth the appropriate standard of review in consent to search cases. (Docket Entry No. 72 at 2). Petitioner argues that, in failing to cite <u>McCaleb</u>, counsel was ineffective.

Petitioner does not make clear why, given the countless number of cases which set forth the standards to be used in gauging whether an individual consents to a search, counsel should be expected to latch onto and cite a specific, decades-old case which presented

17

wholly inapposite facts. Besides, counsel did in fact cite the more recent Sixth Circuit decision in <u>United States v. Ivy</u>, 165 F.3d 397 (6th Cir. 1998) which in turn quotes <u>McCaleb's</u> language. Further, the fact that the Government must show that the consent to search was voluntary and uncontaminated by duress or coercion is hardly a novel idea and one which is well-understood by this Court and the Sixth Circuit. Therefore, counsel's failure to cite <u>McCaleb</u>, or to set forth the standard of review for a consent to search, did not prejudice Petitioner.

Petitioner next claims counsel was ineffective in failing to argue adequately that Petitioner did not voluntarily, knowingly, and intentionally consent to a search of his computer because he signed the Directives under coercion and fear. Even if that claim was not directly raised in the Motion to Suppress, it certainly was addressed by the Court. In this Court's Memorandum relating to the Motion to Suppress, the Court ruled:

> During the course of the evidentiary hearing on the motions to suppress, Defendant testified he felt he had to sign the agreements authorizing searches or risk being sent back to jail. To the extent that Defendant is attempting to use this belated assertion to vitiate an otherwise lawful consent, the Court must reject the argument.
>
> Defendant's assertion comes late in the game and is not credible. Presumably most, if not all, probationers and parolees would not like to be under the restrictions that are imposed. However, probationers "do not enjoy the 'absolute liberty to which every citizen is entitled.'" <u>Griffin,</u> <u>supra</u>, 483 U.S. at 874, 107 S.Ct. 3164 (quoting, <u>Morrissey v. Brewer,</u> 408 U.S 471, 480, 92 S.Ct. 2593 (1972)). "Just as other punishments for criminal convictions curtail an offender's freedom, a

court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law abiding citizens." <u>Knights</u>, <u>supra</u> at 119, 122 S.Ct. 487. Here, as a trade-off for staying out of jail, Defendant knowingly made certain concessions, including the one at issue in this case.

Defendant read, and had read to him, the Agreement and Directives. He voiced no questions or concerns at the time of signing, even though he was provided that opportunity. Nor did he petition the court or the Board to change the standard conditions, as was his right. Instead, Defendant knowingly agreed to the written conditions, and he is bound by those conditions, which included consent to search his computer. Defendant cannot escape the consequences of the Agreement by now saying he did not really want to sign the Agreement or the Directives.

(Case No. 3:04-00199, Docket Entry No. 32 at 15-16). Counsel cannot be ineffective for allegedly failing to raise an argument which the Court specifically considered and rejected.

Petitioner also argues counsel was ineffective on appeal by relying on <u>United States v. Roark</u>, 36 F.3d 14 (6th Cir. 1994) which Petitioner claims was "a valiant effort but [one] that fell short and was incomplete." (Docket Entry No. 2 at 80). <u>Roark</u> dealt with whether consent to search a residence encompassed a search of another residence located on the same property. Counsel utilized <u>Roark</u> by analogy when arguing that the consent provided by the Directives was only a consent to search "public" spaces on the computer, and not "private" places. Petitioner asserts counsel could have presented more analogous cases, but Petitioner fails to indicate what those cases are. In any event, Petitioner was not prejudiced by counsel's reliance on <u>Roark</u> because the issue, i.e.

19

whether the Directive encompassed the search in this case, was squarely presented to, and rejected by the Sixth Circuit.

Petitioner next claims counsel was ineffective because counsel believed that the police did not need to obtain a warrant in cases such as this which involve child pornography. There is no support for this contention and it is belied by the record. Counsel did in fact raise the issue about the need for a search warrant, both before this Court and on appeal. Merely because the argument was rejected and merely because Petitioner disagrees with those rulings does not mean counsel was ineffective.

Petitioner argues that counsel was ineffective in failing to present a "stalking horse" argument to the Court of Appeals. In this regard, Petitioner faults counsel for failing to challenge this Court's ruling "that Harrien didn't use his probation search to help the police evade the Fourth Amendment's warrant and probable cause requirements." (Docket Entry No. 2 at 97). Given this Court's detailed findings on the issue, such an argument would have been untenable because appellate courts are bound by findings of fact unless the same are clearly erroneous. See, United States v. Coffee, 434 F.3d 887, 892 (6th Cir. 2006). Counsel is not ineffectual in failing to make an unwinnable argument, nor is counsel required to raise every nonfrivolous claim on appeal. See, Jones v. Barnes, 436 U.S. 745, 751 (1983); Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002). "In fact, the 'process of winnowing out weaker arguments on

20

appeal and focusing on those most likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.'" <u>Williams v. Bagley</u>, 380 F.3d 932, 970 (6th Cir. 2004).

Finally, Petitioner claims counsel was ineffective because he actively and/or passively aided the prosecution. In this regard, he argues that "it is highly unlikely that inadvertency had been removed as a prerequisite of the plain view doctrine," (Docket Entry No. 2 at 105), but counsel told him otherwise during a courthouse meeting thereby "avoiding the superior arguments" (<u>id</u>.) to the benefit of the prosecutor. However, contrary to Petitioner's apparent contention, the Supreme Court has in fact held that inadvertence is not a necessary condition for a plain-view seizure. <u>Horton v. California</u>, 496 U.S. 128, 135 (1990).

Petitioner also claims counsel assisted the prosecutor by asking her, prior to the suppression hearing, where Burden (the other probation officer at the search) was. This inquiry, Petitioner submits, alerted the prosecutor that it was a Probation Officer who was initially on the scene with Harrien, not a police officer as the prosecutor supposedly believed. Whether this corrected any misperception on the prosecutor's part is unclear since Harrien clearly stated when first asked in his direct testimony that a probation officer accompanied him on the search and that the probation officer had subsequently moved to Lexington, Tennessee. Regardless, the whole point of the suppression hearing

21

was to allow the Court to determine the true facts and Petitioner was not prejudiced by this Court's discovery of those facts, regardless of how that came about.

Petitioner also claims counsel was ineffective because he repeated questions to Harrien which had already been asked by the prosecutor.  The passages cited by the Petitioner make clear counsel was merely trying to understand Harrien's position.  Further, the questions and answers cited by Petitioner dealt with Harrien's knowledge of the Memo and its applicability or inapplicability to the search of computers.  As this Court has already made clear, Harrien's lack of knowledge of the Memo aside, Petitioner consented to the search by virtue of the Directives and therefore he could not be prejudiced by questions which merely clarified that which had already been presented at the suppression hearing.

## IV.  CONCLUSION

On the basis of the foregoing, Petitioner's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (Docket Entry No. 1) will be denied and no certificate of appealability will issue.

An appropriate Order will be entered.

ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

22